884 F.2d 1390
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED FINANCIAL CORPORATION, Plaintiff-Appellant,
v.
ESI, INC. OF TENNESSEE, Defendant-Appellee.
 No. 88-3641.
 United States Court of Appeals, Fourth Circuit.
 Argued May 11, 1989.
Decided Aug. 24, 1989.
 
 Kathy Jane King (Rayburn, Moon & Smith, P.A. on brief) for appellant.
 Robert Donald Ingram (Moore & Rogers, J. Mitchell Aberman, James McElroy & Diehl on brief) for appellee.
 Before WIDENER and SPROUSE, Circuit Judges, and FRANKLIN T. DUPREE, Jr. Senior Judge, United States District Court for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 The controversy underlying this appeal developed when a general contractor paid its subcontractor in full after the subcontractor had assigned its right to the amount due it to a financial institution. The financial institution then brought this action against the general contractor claiming it was entitled to the payment by virtue of the assignment. The district court dismissed the claim, finding that the agreement between the contractor and subcontractor did not allow the subcontractor to assign the right to receive payment for the debt and alternatively finding that the financial institution did not give the required notice of the debt assignment to the general contractor. Without reaching the contract issue, we affirm based on the district court's alternative finding that the assignee failed to give notice of the assignment.
 
 
 2
 ESI, Inc. of Tennessee is a general construction contractor that contracted to construct a steam plant in Albermarle, North Carolina. In December 1986, ESI subcontracted with Aurora Enterprises, Inc., to fabricate a steel structure for use in completing the Albermarle project. Aurora, in turn, subcontracted part of the work to Oakboro Steel Company. The subcontract was completed and Aurora billed ESI for the amount due, $26,580, by its invoice of February 16, 1987.
 
 
 3
 On January 27, 1987, Aurora entered into a general security agreement and factoring contract with United Financial Corporation, assigning all of its accounts receivable to United. Later, on March 3, 1987, United specifically purchased Aurora's accounts receivable, including the amount due from ESI, represented by Aurora's invoices of February 16, 1987.[1]
 
 
 4
 Aurora's name and its Charlotte, North Carolina address were printed at the top of its invoice, but a notation appeared at the bottom stating, "Mail check to: P.O. Box 101662, Atlanta, GA 30392," which is Irving Commercial's address. Irving Commercial's name did not appear, however, and the invoice had no notation indicating any assignment of the debt.
 
 
 5
 On March 26, 1987, Charles Campbell, United's President, telephoned Donna Duncan, the Manager of Administrative Services at ESI. United contends that the substance of that telephone conversation gave notice to ESI of Aurora's assignment to United. Campbell testified that he asked whether ESI had any problem regarding Aurora's invoice. Duncan purportedly replied that she could not approve payment until she was satisfied that Aurora's subcontractors had been paid. She informed Campbell that she did not know him. He said he advised her, "I'm United Financial Corp. We were assigned the [Aurora] invoice and it's payable to Irving Commercial." Campbell testified that he called Duncan again the same day indicating that he had spoken to Aurora and that he understood that a joint check might be issued. He asked her to inspect the invoice to ensure that it indicated that it was "payable to Atlanta, Georgia," and if she had any doubts as to whom to pay, "she shouldn't pay anyone."
 
 
 6
 Duncan testified that no one told her on March 26 that Aurora made the assignment to United and that, later that same day, Aurora representatives advised her to send payment to Oakboro Steel and Aurora Enterprises. She requested written confirmation and received an express mail letter from Aurora the next day, March 27, stating, "joint check to be issued to Oakboro Steel Company and Aurora Enterprises. Please mail check to Oakboro Steel." Three days later, on March 30, ESI mailed a check made out jointly to Aurora and Oakboro Steel for the total invoice amount of $26,580.
 
 
 7
 In January 1988, United brought this diversity action against ESI on the assignment. The case was tried to a jury, but, at the conclusion of all of the evidence, the district court directed a verdict in favor of ESI, finding that a clause in the subcontract between ESI and Aurora prohibited assignment without the consent of ESI and that ESI had not consented. As an alternative ground, the court held as a matter of law that United had not given ESI the notice of assignment required by the Georgia Commercial Code.[2]
 
 
 8
 On appeal, United contends, as it did below, that the subcontract between ESI and Aurora was for the sale of goods and, therefore, that the clause prohibiting the assignment of monies due is ineffective under Georgia law. United also contends that the district court erred in directing the verdict on the alternative ground that it did not give notice to ESI as required by the Georgia Commercial Code.
 
 
 9
 Agreeing with the district court's alternative holding that United did not properly notify ESI of the assignment prior to payment, we affirm. Section 11-9-318(3) of the Georgia Code provides:
 
 
 10
 The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.
 
 
 11
 Section 11-1-201 defines "notice" and "notifies":
 
 
 12
 (25) A person has "notice" of a fact when:
 
 
 13
 (a) He has actual knowledge of it; or
 
 
 14
 (b) He has received a notice or notification of it; or
 
 
 15
 (c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists.
 
 
 16
 A person "knows" or has "knowledge" of a fact when he has actual knowledge of it....
 
 
 17
 (26) A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when:
 
 
 18
 (a) It comes to his attention; or
 
 
 19
 (b) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.
 
 
 20
 (27) Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence.
 
 
 21
 United did not provide ESI with written notice of its assignment from Aurora or its assignments to Irving Commercial until well after ESI had paid its subcontractors, Aurora and Oakboro. United contends, however, that the invoice with a notation to mail the check to a post office box in Atlanta, Georgia together with Campbell's March 26 telephone calls to Duncan gave sufficient notice of the assignment to ESI. United argues that, under Georgia law, a written notice of assignment is not necessary and the question whether oral notice is sufficient to validate an assignment is a question of fact. Without deciding whether written notice is necessary, we agree with the district court that Campbell's telephone communications are confusing and contradictory at best and that no properly instructed and reasonable juror could believe that the calls effectively identified or gave notice of the assignment. In view of our disposition of the "notice" issue, we do not address United's argument that the subcontract's anti-assignment clause is ineffective under Georgia law.
 
 
 22
 The judgment of the district court, therefore, is affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 More than a year prior to United's purchase of Aurora's accounts, United had assigned its accounts receivable to Irving Commercial Corporation. Therefore, United purchased the Aurora accounts receivable for the benefit of Irving Commercial. Before United filed this suit, however, Irving Commercial assigned the disputed Aurora account back to United
 
 
 [2]
 The district court applied Georgia law because ESI and Aurora chose the Georgia forum in their contract